# EXHIBIT 1

Case 1:25-cv-06046-JPC     Document 1-1     Filed 07/23/25     Page 1 of 14

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)         INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                                          RECEIVED NYSCEF: 05/27/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
BELINDA AZAMATI,                                                            Index No.:

                Plaintiff,                                                          **SUMMONS**

    -against-

JPMORGAN CHASE & CO.,                                                       Date of Purchase
                                                                            of Index No.:
                                                                            May 27, 2025
                Defendant.
------------------------------------------------------------------------X

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer within twenty [20] days after the service (or within thirty [30] days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgement will be taken against you by default for the relief demanded in the complaint.

      The plaintiff designates New York County as the place of trial which is the county in which the acts and omissions giving rise to the allegations made in the complaint occurred.

Dated:   New York, New York
           May 27, 2025

                                      **KAISER SAURBORN & MAIR, P.C.**

                              By: _____
                                  Daniel J. Kaiser, Esq.

                                  Attorney for Plaintiff
                                  30 Broad Street, Fl. 37
                                  New York, New York 10004
                                  (212) 338-9100

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------X

BELINDA AZAMATI,

        Plaintiff,

-against-

JPMORGAN CHASE & CO.,

        Defendant.

---------------------------------------------------------------------X

Index No.:

**COMPLAINT**

Plaintiff, Belinda Azamati, by her attorneys Kaiser Saurborn & Mair, P.C., as and for her complaint against Defendant, JPMorgan Chase alleges as follows:

## PARTIES, JURISDICTION, AND NATURE OF ACTION

1. Plaintiff, Belinda Azamati ("Plaintiff" or "Ms. Azamati"), is a former employee of JP Morgan Chase & Co. ("Defendant" or "JPM").

2. Upon information and belief, Defendant, JPMorgan Chase ("Defendant" or "JPM"), is a Company authorized to do business in New York State.

3. Venue is properly laid in this court in that the causes of action arose in New York County.

4. Defendant harassed and terminated Ms. Azamati because she complained of race and gender discrimination and, further, because she required accommodations for her mental illness resulting from the gender and racial harassment she experienced by her employer. Ms. Azamati asserts claims under Executive Law §296 and New York City Administrative Code §8-502(a).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## BACKGROUND

### I.

### MS. AZAMATI'S JPM EMPLOYMENT

5. In July 2019, after graduating from Princeton University, Ms. Azamati joined JPM's New York City Office in the Bank's Sales & Trading Division on the Investment Grade Sales Team ("IGB").

6. Ms. Azamati moved to JPM's DC office in February 2023.

7. During the entire course of her JPM employment, Ms. Azamati's work performance was exemplary.

8. Despite her work diligence and professional achievements, Ms. Azamati endured persistent racial gender harassment, as a Black woman, and bullying from colleagues and managers, which led to a diagnosis of depression and suicidal ideation as well as generally a hostile work environment.

### II.

### MS. AZAMATI WAS RETALIATED AGAINST BY JPM

9. In March 2021, Ms. Azamati, as a consequence of the bullying and intimidation, was required by her manager, Dave Akthar ("Akthar"), former Head of IGB to take medical leave to treat her depression and anxiety.

10. Human Resources ("HR") reached out to Ms. Azamati in February of 2021 requesting to conduct an investigation after discovering racial microaggressions against Ms. Azamati from her colleagues. Months later in summer of 2021, HR shared with Ms. Azamati that the investigation had been finalized and they had found items to address.

11. When Ms. Azamati returned to work on June 1, 2021, she was placed on the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)　　INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　RECEIVED NYSCEF: 05/27/2025

Case 1:25-cv-06046-JPC    Document 1-1    Filed 07/23/25    Page 5 of 14

Impact Finance ("IF") team within the Corporate Responsibility division. Ms. Azamati was hopeful this new placement would serve as a fresh start. And, in fact, Ms. Azmati's talent was recognized, leading to a promotion from Analyst to Associate in January 2022, followed by another promotion to Senior Associate in January 2023.

12.　　In this role, Ms. Azamati was trusted to lead and execute deals and manage lucrative client relationships, which Ms. Azamati hoped would serve to prepare her professionally for one day being promoted to Vice President.

13.　　In the Fall of 2023 this upward trajectory was disrupted when Ms. Azamati was diagnosed with Chronic Post Traumatic Stress Disorder stemming from continued workplace harassment and a hostile work environment created by colleagues and managers, which included the denial of PTO granted to white colleagues and being subjected to hourly tracking, a monitoring requirement not imposed on colleagues of other races or genders.

14.　　The Head of Diversity, Equity and Inclusion (DEI) investigated Ms. Azamati's claims of discrimination and reported discriminatory treatment of Ms. Azamati's manager to HR.

15.　　Ms. Azamati went on her second medical leave to treat her mental illness from November 2023 to February 2024.

16.　　When Ms. Azamati returned to work in February 2024, she required several reasonable accommodations including flexible scheduling and remote working. Although she was afforded those accommodations, JPM stripped Ms. Azamati of key responsibilities as retaliation, including her role in the Fund Investing Vertical, a role she had advocated for over a year to join. She also faced heightened scrutiny regarding her work and whereabouts, including constant harassment as to whether work tasks were being completed despite no history of underperformance.

3

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

4 of 13

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 05/27/2025

Case 1:25-cv-06046-JPC    Document 1-1    Filed 07/23/25    Page 6 of 14

17. On February 12, 2024, Ms. Azamati met with Diana Kolar, Executive Director and Ms. Azamati's manager from October to November 2023; and Erin Robert, Managing Director and former Head of the Impact Finance team. The meeting was set up to provide Ms. Azamati's 2023 year-end review, which was completed without her input while she was on medical leave.

18. The review falsely and vaguely painted Ms. Azamati as incompetent, criticizing her in areas where she had clear records of success. Ms. Kolar and Ms. Robert were clearly attempting to create a false image of Ms. Azamati to ultimately push Ms. Azamati out of her position with the Bank.

19. Despite these challenges, Ms. Azamati continued to perform exceptionally, leading deals and securing approvals from the Loan Committee to execute transactions. Her progress, however, came to a halt on August 5, 2024, during her mid-year review, when she was given an unwarranted dissatisfactory rating and subsequently placed on a Performance Improvement Plan (PIP).

20. Again, the criticisms were extremely vague without any concrete examples of poor work performance. Since the issuance of the PIP, Ms. Azamati has been ostracized by her superiors and co-workers and subjected to false work criticism. The constant harassment and bullying exacerbated her PTSD, for which she has had to seek continuous treatment.

21. On August 26, 2024, Ms. Azamati was informed by a colleague on the team, Archi Bizoza, that Joe Bateman, VP, informed him two weeks after Mr. Bizoza joined the team that "Belinda does not want to work." Joe's comments caused Mr. Bizoza to become wary of working with her and led him to mistrust her work product.

22. This false characterization of Ms. Azamati's work ethic significantly harmed her

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 05/27/2025

Case 1:25-cv-06046-JPC    Document 1-1    Filed 07/23/25    Page 7 of 14

professional reputation within the team. Mr. Bizoza, influenced by Mr. Bateman's comments, became wary of collaborating with her and began to mistrust Ms. Azamati's work product, which severely impacted her ability to foster productive working relationships. This sabotage not only affected her credibility but also had the potential to hinder future opportunities for collaboration and career growth.

23. On September 6, 2024, at 8 PM, Ms. Azamati filed a discrimination complaint with HR.

24. On September 10, 2024, Ms. Azamati attended an initial meeting with HR Associate Chase DeLeon. During her meeting with Mr. DeLeon, he shared several observations that highlighted concerns about her treatment within the team. He stated that, upon reviewing her "Mid-Year Performance Review Response," he identified conduct allegations and observed trends of disparate treatment based on race and gender.

25. Specifically, Mr. DeLeon pointed out that white male team members were not held to the same standards Ms. Azamati was subjected to, which highlighted a concerning pattern of differential treatment that was not applied equitably across the team. This observation spoke to a broader issue of bias in how performance expectations were applied to different individuals based on their race and gender.

26. Mr. Deleon further emphasized that Mr. Bateman's comments regarding her work ethic were not in line with JPM's code of conduct. He also expressed concerns about her manager contacting her outside of work hours, clarifying that responding by Monday after the weekend was considered acceptable within the business context. This comment reinforced Ms. Azamati's belief that the expectations for her communication had been unfairly held to a higher standard than those of others, particularly when it came to non-business hours.

5

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

6 of 13

27. Michelle Egan, Executive Director and Head of Credit Solutions for Impact Finance & Advisory, was Plaintiff's former manager. She worked with and reported to Michelle Egan since being hired onto the team on June 1st, 2021. Michelle Egan placed Ms. Azamati on the PIP and participated in acts of harassment and retaliation.

28. Additionally, Mr. DeLeon noted that Ms. Egan's delayed feedback prevented her from having the opportunity to grow and address areas of concern in a timely manner, which significantly impacted Ms. Azamati's ability to make necessary improvements and develop professionally. The delay in feedback created a challenging and hostile work environment for her growth and hindered her ability to respond effectively to performance issues.

29. On September 25, 2024, Ms. Azamati was informed by Mr. DeLeon that Ms. Azamati's discrimination complaint had been escalated and reassigned to the Conduct team. The rationale provided was that the issue was "more egregious than previously understood." The escalation to the Conduct team suggested a serious breach of conduct.

30. On October 4, 2024, during a meeting with Ms. Egan, Ms. Azamati was informed that HR had advised Ms. Egan to no longer provide any feedback or updates regarding the performance coaching process. Ms. Egan shared that HR had instructed her not to comment on whether the coaching was finished, extended, or how it had progressed. This shift in communication was disorienting and left Ms. Azamati with a sense of confusion. Notably, just a few weeks later HR acknowledged that no such instruction was provided to Ms. Egan.

31. On October 7, 2024, Ms. Azamati met with Jamesia Brown, HR Vice President, to investigate her complaint. Ms. Brown informed her that she would be conducting an investigation to determine whether Ms. Egan had violated JPM's code of conduct in placing her on performance coaching, and whether race had played a role in this decision.

6

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

7 of 13

32. During the meeting with Ms. Brown, Ms. Azamati expressed concerns about an equitable year-end review and the potential impact of this situation on her incentive pay. Given the ongoing investigation, she was worried that bias or unfair treatment might influence her year-end review, which would further affect her career progression and financial compensation.

33. On October 9, 2024, a Microsoft Teams chat among the DC team members took place, which involved troubling comments about a Black female employee who sat next to other members of her team. In the Teams message at 11:40 AM, Diana Kolar, an Executive Director (a white woman who was her manager before her medical leave in 2023), wrote several discriminatory comments, including:

- "you guys, we need to slowly kick this other lady out of our row."
- "idk how we can do it,"
- "but book strategically and claim the whole row for ourselves."
- "maybe she'll go on vacation soon."

34. These comments are deeply concerning, as they not only reflect clear discriminatory behavior but also show a lack of respect for the Black woman employee involved. The suggestion that her absence might be arranged by manipulating her schedule (e.g., hoping she would go on vacation) is disturbing and shows a deliberate attempt to undermine her presence.

35. This incident was particularly upsetting to Ms. Azamati because she experienced similar harassment and bullying from Ms. Kolar in the past, which led to her medical leave. Moreover, the involvement of Mr. Bateman, who witnessed, participated in, and possibly encouraged this behavior, points to a pattern of discriminatory and harassing conduct within the team, which mirrored her own experiences.

7

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

8 of 13

36. On October 22, 2024, at the Opportunity Finance Conference ["OFN"] in Los Angeles, Ms. Azamati discovered that she had been intentionally excluded from a client event that took place on the evening of October 21st.

37. On the evening of October 21st, Ms. Egan invited Mr. Bateman and Sloane Wong, Associate Underwriter, to a client dinner reception hosted by a partnering team at the firm. This reception was an important event, as it involved many joint clients. Ms. Azamati, given her role, should have been invited but was instead deliberately excluded from attending this very important business opportunity.

38. On October 26, 2024, Ms. Azamati again filed a discrimination complaint with HR which this time focused on Mr. Bateman's discriminatory and harassing conduct.

39. On November 5, 2024, Ms. Egan informed her that she would no longer respond in writing to the questions Ms. Azamati raised about performance coaching. Ms. Azamati responded that she was more comfortable receiving written answers to avoid potential misunderstandings and to ensure accurate record-keeping.

40. Despite her concerns and repeated requests, Ms. Egan reiterated that she would not provide a written response to clarify the status of the performance coaching. Ms. Azamati's ability to remain gainfully and productively employed by Chase was severely compromised by Ms. Egan's refusal to provide work feedback.

41. Separately, Chase failed to follow its own internal rules concerning performance reviews and the issuance of PIPs. Chase did not engage progressively with Ms. Azamati providing her documentation of her alleged performance deficiencies and warnings leading to the PIP.

42. On November 13, 2024, Ms. Azamati discovered that she alone was not

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

9 of 13

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)  INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                                                              RECEIVED NYSCEF: 05/27/2025

Case 1:25-cv-06046-JPC   Document 1-1   Filed 07/23/25   Page 11 of 14

scheduled for monthly meetings with Shuman Chakrabarty, Head of the Impact Finance team, further ostracizing her from her work and the team.

43. On November 18, 2024, Ms. Azamati was informed by Ms. Brown that JPM's investigation of Ms. Azamati's discrimination complaint resulted in a finding of no alleged wrongdoing.

44. On December 1, 2024, she was advised that her second discrimination complaint also resulted in a finding of no alleged discrimination.

45. On December 20th, 2024, she received a Written Warning Disciplinary Violation

46. On February 3rd, 2025, Ms. Azamati discovered that she was excluded from conversations and meetings with a client where she was the Primary Relationship Manager. Ms. Azamati was only informed a month later that Michelle Egan, Joe Bateman, and others on the team, including those without direct coverage of the client, were brought into the fold and informed of business matters concerning the client. There were meetings held with her client that Ms. Azamati was intentionally excluded from.

47. On February 18th, Ms. Azamati was subject to a hostile and aggressive encounter with Joe Bateman while in the office. After asking for clarity on a work directive, Joe Bateman walked over to Ms. Azamati's desk in the office and directed anger and hostility towards Ms. Azamati by raising his voice at her. Ms. Azamati attempted many times to de-escalate the situation as Joe Bateman was angry. Left feeling highly uncomfortable after the interaction, Ms. Azamati sent a recap email to Joe Bateman discussing the incident and expressing the desire to have a respectful and productive working dynamic.

48. On February 18th, an underwriter on the team informed Ms. Azamati of remarks Joe Bateman made concerning another woman of color (Latina) colleague. Joe Bateman made

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                                      RECEIVED NYSCEF: 05/27/2025

Case 1:25-cv-06046-JPC   Document 1-1   Filed 07/23/25   Page 12 of 14

statements that he is working to recommend that the Latina colleague be placed on a PIP. Joe Bateman made comments that her work product was horrendous and that he does not believe that said colleague should hold her rank as an associate at the firm. Joe Bateman had not made such comments about the work products of white or male colleagues on the team.

49. On February 20th, 2025, Ms. Azamati discovered that she was excluded from another client meeting with a client she covered.

50. On February 26th, 2025, while on a team call, Ms. Azamati discovered that she was excluded from another client call on an active deal she was staffed on. Joe Bateman organized the meeting and included all those staffed on the deal except for Ms. Azamati. There has been a trend of Joe Bateman, white VP who stated in August 2024 that "Belinda doesn't want to work", excluding Ms. Azamati from several client meetings for deals that she was staffed on.

51. On March 7th, 2025, Sloane Wong, Associate Underwriter, the only Latina colleague on the team, shared with Ms. Azamati how she was experiencing hyper scrutiny and targeting from Joe Bateman. Ms. Sloane Wong had numerous encounters with Joe Bateman where she was subject to abrasive communication.

52. For all relevant instances referred to herein, Ms. Azamati's job performance was exemplary.

53. On May 1st, 2025, Ms. Azamati was summarily terminated.

54. On May 16th, 2025, Ms. Azamati saw the job posting online for her former role. In it, the base pay went from $125,500-$170,000 for an Associate. As a Senior Associate, Ms. Azamati was only making $140,000 base and was passed over for a pay raise two years in a row. When Ms. Azamati raised this matter, she was told by Managing Director Erin Robert "we do

10

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.
                                                                                        11 of 13

not discuss pay."

55. As a Black woman, Ms. Azamati was paid substantially less than white male employees for the same work.

56. Ms. Azamati's job performance was superior as compared to her other peers who were not treated disparagingly and were not terminated.

57. Defendant terminated plaintiff in egregious disregard of her civil rights under New York State and New York City Human Rights statutes.

58. Defendant had no legitimate business reason for terminating Plaintiff.

59. Defendant's stated reasons are a pretext for unlawful discrimination.

60. Defendant's conduct has had a continuing impact on Plaintiff.

## CAUSE OF ACTION I

61. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "60" as if incorporated and alleged herein.

62. Defendant discriminated against Plaintiff because of her gender and race and disability and retaliated against her for complaining of the discrimination.

63. By reason thereof, Defendant has violated Executive Law §296, and Plaintiff has been damaged in an amount to be determined at trial.

## CAUSE OF ACTION II

64. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "60" and "62" as if incorporated and realleged herein.

65. By reason thereof, Defendant has violated New York City Administrative Code §8-502(a), and Plaintiff has been damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

11

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.    12 of 13

(i)  On the First Cause of Action assessing compensatory damages in an amount to be determined at trial;

(ii) On the Second Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

(iii) Attorney fees and disbursements; and

(iv) For such other relief as the Court deems just and proper.

Dated: New York, New York
       May 27, 2025

**KAISER SAURBORN & MAIR, P.C.**

By:_____

Daniel J. Kaiser, Esq.
William H. Kaiser, Esq.

Attorneys for Plaintiff
30 Broad Street, 37th Floor
New York, New York 10004
(212) 338-9100

12

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.    13 of 13