**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BELINDA AZAMATI, | |
|       Plaintiff, | |
|       v. | 1:25-cv-06046-RA |
| JPMORGAN CHASE & CO., | |
|       Defendant. | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S<br>MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION</u>

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.    Plaintiff Agreed to Arbitrate her Employment-Related Disputes with JPMC ................................................................................................ 3

    B.    Plaintiff's Allegations ..................................................................... 4

III.    LEGAL ARGUMENT ..................................................................................... 6

    A.    The Court Should Compel Arbitration because Plaintiff Entered into a Valid Arbitration Agreement that Covers Her Claims. ........................ 6

        1.    The Parties Entered into a Valid Arbitration Agreement .......................... 6

        2.    This Dispute Falls Within the Scope of The Agreement and is Arbitrable. ........................................................................................ 8

    B.    The FAA Requires Enforcing Plaintiff's Arbitration Agreement ......................... 8

    C.    The EFAA Does Not Exempt Plaintiff from Submitting Her Claims to Arbitration. ........................................................................................ 9

        1.    The EFAA Does Not Apply to Plaintiff's Gender-Based Discrimination Claims .................................................................... 10

        2.    The EFAA Only Applies to Plausible Claims of Sexual Harassment ........................................................................................ 13

        3.    Plaintiff Failed to State a Plausible Claim for Sexual Harassment .......... 15

        4.    Plaintiff's NYCHRL Claim is Not Encompassed By The EFAA. .......... 17

    D.    Even If the EFAA Applies, Plaintiff Still Must Arbitrate Her Allegations Relating to Discrimination and Retaliation ......................................... 19

        1.    Controlling Law Requires Giving Effect to The Severability Clause ........................................................................................ 19

    E.    The EFAA Itself Supports Enforcing the Parties' Arbitration Agreement in Relation to Plaintiff's Non-Sexual Harassment Claims ....................... 20

IV.    CONCLUSION ............................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................14

*Azamati v. JPMorgan Chase & Co.*,
    No. 1:25-cv-06046 (S.D.N.Y.)...............................................................................23

*Bassett v. Elec. Arts, Inc.*,
    93 F. Supp. 3d 95 (E.D.N.Y. 2015) .........................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................14

*Bermudez v. City of N.Y.*,
    783 F. Supp. 2d 560 (S.D.N.Y. 2011).....................................................................16

*Brady v. Williams Capital Grp., L.P.*,
    64 A.D.3d 127 (1st Dept. 2009)..............................................................................20

*Bruesewitz v. Wyeth LLC*,
    562 U.S. 223 (2011).................................................................................................18

*Charter Comms, Inc. v. Garfin*,
    No. 20 Civ. 7059 (KPF), 2021 WL 694549 (S.D.N.Y. Feb. 23, 2021) ...................8

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001)...................................................................................................7

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995).........................................................................................20

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992).................................................................................................18

*Crespo v. Kapnisis*,
    No. 21-cv-6963, 2022 WL 2916033 (E.D.N.Y. July 25, 2022).............................19

*Daly v. Citigroup Inc.*,
    939 F.3d 415 (2d Cir. 2019).......................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)...................................................................................................9

*Distasio v. Perkin Elmer Corp.*,
    157 F.3d 55 (2d Cir. 1998).......................................................................................13

*Dixon v. Dollar Tree Stores, Inc.*,
    No. 22-cv-131S, 2023 WL 2388504 (W.D.N.Y. Mar. 7, 2023) .............................11

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)...................................................................................................9

*Faith v. Khosrowshahi*,
  No. 21-cv-6913, 2023 WL 5278126 (E.D.N.Y. Aug. 16, 2023) ............................................11

*Feuer v. Stoler of Westbury, Inc.*,
  No. 20-cv-6094, 2021 WL 4820605 (E.D.N.Y. Oct. 15, 2021) ...............................................8

*Fleming v. MaxMara USA, Inc.*,
  371 F. App'x 115 (2d Cir. 2010) ...........................................................................................16

*Gilbert v. Indeed, Inc.*,
  No. 20 Civ. 3826 (LJL), 2021 WL 169111 (S.D.N.Y. Jan. 19, 2021)......................................8

*Gonzalez v. Carnival Corp.*,
  No. 24-cv-21361, 2024 WL 4863892 (S.D. Fla. Nov. 22, 2024) ...........................................13

*Goodwine v. City of N.Y.*,
  No. 15-cv-2868, 2016 WL 3017398 (S.D.N.Y. May 23, 2016) ..............................................16

*Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*,
  No., 2023 WL 2138693 (S.D.N.Y. Feb. 21, 2023) (Cronan, J.)................................................8

*Harge v. City of N.Y.*,
  No. 21-cv-2293, 2022 WL 17481819 (2d Cir. 2022) .............................................................15

*Holliday v. Wells Fargo Bank, N.A.*,
  No. 23-cv-418, 2024 WL 194199 (S.D. Iowa Jan. 10, 2024)................................................13

*Johannessen v. JUUL Labs, Inc.*,
  No. 23-cv-3681, 2024 WL 3173286 (N.D. Cal. June 24, 2024)............................................13

*Johnson v. Everyrealm, Inc.*,
  657 F. Supp. 3d 535 (S.D.N.Y. 2023)...........................................................................21, 22, 23

*K.T. v. A Place for Rover*,
  No. 23-cv-2858, 2023 WL 7167580 (E.D. Pa. Oct. 31, 2023), *reconsideration
  denied*, 2024 WL 1356221 (E.D. Pa. Mar. 29, 2024) ............................................................13

*Latif v. Morgan Stanley & Co.*,
  No. 18 Civ. 11528 (DLC), 2019 WL 2610985 (S.D.N.Y. June 26, 2019) ...............................8

*Marciano v. DCH Auto Grp.*,
  14 F. Supp. 3d 322 (S.D.N.Y. 2014).......................................................................................7

*Mera v. SA Hospitality Grp., LLC*,
  675 F. Supp. 3d 442 (S.D.N.Y. 2023)...............................................................19, 20, 21, 24

*Mitchell v. Raymond James & Assocs., Inc.*,
  No. 23-cv-2341, 2024 WL 4486565 (M.D. Fla. Aug. 23, 2024)...........................................13

*Moody v. Flowers*,
  387 U.S. 97 (1967).................................................................................................................17

*Moulds v. Skillcycle, Inc.*,
  No. 23-cv-4873, 2024 WL 2206464 (E.D. Pa. Mar. 27, 2024) .............................................11

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
  514 U.S. 645 (1995)................................................................................................................22

*O'Sullivan v. Jacaranda Club, LLC*,
    224 A.D. 3d 629 (1st Dep't 2024) ...................................................................19, 24

*Padro v. Citibank, N.A.*,
    No. 14-cv-2986, 2015 WL 1802132 (E.D.N.Y. Apr. 20, 2015) ................................6

*Palmore v. United States*,
    411 U.S. 389 (1973)................................................................................................17

*Pungitore v. Barbera*,
    506 F. App'x 40 (2d Cir. 2012)..............................................................................15

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010)...................................................................................19

*Silverman v. DiscGenics, Inc.*,
    No. 22-cv-354, 2023 WL 2480054 (D. Utah Mar. 13, 2023) ................................19

*Singh v. Meetup LLC*,
    750 F. Supp. 3d 250 (S.D.N.Y. 2024)...................................................11, 12, 13, 14

*Smith v. Spizzirri*,
    144 S. Ct. 1173 (2024)............................................................................................9

*Stern v. Espeed, Inc.*,
    No. 06-cv-958, 2006 WL 2741635 (S.D.N.Y. Sept. 22, 2006) ................................7

*Stinson v. City Univ. of N.Y.*,
    No. 17-cv-3949, 2018 WL 2727886 (S.D.N.Y. June 6, 2018) ...............................15

*Taggart v. Lorenzen*,
    587 U.S. 554 (2019)...............................................................................................14

*Tarulli v. Circuit City Stores, Inc.*,
    333 F. Supp. 2d 151 (S.D.N.Y. 2004)......................................................................7

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001).................................................................................................22

*UBS Sec. LLC v. Prowse*,
    No. 20-cv-217, 2020 WL 433859 (S.D.N.Y. Jan. 27, 2020) ...................................7

*United States v. City & Cnty. of Denver*,
    100 F.3d 1509 (10th Cir. 1996) .............................................................................17

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022)...............................................................................................20

*White v. WeWork Cos.*,
    No. 20 Civ. 1800 (CM), 2020 WL 3099969 (S.D.N.Y. June 11, 2020) ..................8

*Yost v. Everyrealm*,
    657 F. Supp. 3d 563 (S.D.N.Y. 2023)............................................................ *passim*

**Statutes**

9 U.S.C...................................................................................................................14

9 U.S.C. § 2 .................................................................................................7, 10

9 U.S.C. § 4 .........................................................................................................9

9 U.S.C. § 401(4) ........................................................................................10, 17

9 U.S.C. §§ 401, et seq. ......................................................................................1

9 U.S.C. § 402(a) .......................................................................10, 20, 21, 22

42 U.S.C. § 4762(3) ..........................................................................................18

Civil Rights Act of 1964 Title VII .........................................................2, 15, 17

Ending Forced Arbitration Act ("EFAA") ................................................. *passim*

Fair Labor Standards Act ("FLSA") ..................................................................24

Federal Arbitration Act ("FAA") ............................................................... *passim*

New York City Human Rights Law ("NYCHRL") ..................................... *passim*

New York State Law ("NYSHRL") ............................................................ *passim*

**Other Authorities**

168 Cong. Rec. S624-01 (daily ed. Feb. 10, 2022) (statement of Sen. Jodi Ernst) ....................23

168 Cong. Rec. S624-01 (daily ed. Feb. 10, 2022) ...............................23, 24

Bryan A. Garner, Garner's Dictionary of Legal Usage 862 (3d ed. 2011) ...................................23

CPLR 7515 ...........................................................................................................8

Fed. R. Civ. P. 12(b)(6) ........................................................................................1

Merriam-Webster Dictionary (2024) .................................................................22

Oxford English Dictionary (2024) ....................................................................22

Sexual Harassment, https://dhr.ny.gov/system/files/documents/2024/04/nysdhr-sexual-harassment-brochure_0.pdf (last visited August 6, 2025) ............................12

Sexual Harassment, U.S. Equal Employment Opportunity Commission https://www.eeoc.gov/sexual-harassment (last visited August 6, 2025) ................................12

Stop Sexual Harassment Act, NYC Commission on Human Rights, https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (last visited August 6, 2025) ............................12

## I.    <u>INTRODUCTION</u>

Plaintiff Belinda Azamati ("Plaintiff"), a former employee of Defendant JPMorgan Chase Bank, N.A. ("JPMC")[1] received and assented to JPMC's standard Employment Arbitration Agreement ("Arbitration Agreement") as a condition of her employment with JPMC.  The Arbitration Agreement sets forth the parties' mutual agreement to arbitrate employment related disputes, including the gender, race, and disability-based discrimination and retaliation claims Plaintiff brings in this litigation.  Plaintiff nonetheless attempts to escape her promise to arbitrate, and, instead, seeks to pursue her claims in this Court.  Defendant respectfully requests the Court to grant its Motion to Compel Arbitration and Stay this Action.

In response to Defendant's Motion, Plaintiff has indicated that she will argue that Plaintiff's assertion of a gender-based discrimination claim somehow exempts her claims from the binding arbitration procedure that she agreed to with JPMC, pursuant to the Ending Forced Arbitration Act ("EFAA").  The EFAA, however, only precludes mandatory arbitration of claims of "sexual harassment" and "sexual assault."  9 U.S.C. §§ 401, et seq. (emphasis added).  While Plaintiff argues otherwise, many courts have recognized the EFAA applies only when a plaintiff (1) alleges sexual harassment; and (2) the allegations of sexual harassment state a plausible claim for relief under the familiar Rule 12(b)(6) pleading standards.  Here, Plaintiff does not come remotely close to satisfying those standards.  First, although Plaintiff generally refers to "harassment" in a conclusory fashion throughout her Complaint, the conduct she refers to is neither the type of conduct that can form the basis of a "sexual harassment" claim, nor does the conduct as alleged rise to the level of actionable "sexual harassment" under the law.  The reality is that

---

[1] JPMorgan Chase & Co. is improperly named in the Complaint as the defendant. The correct entity name is JPMorgan Chase Bank, N.A.

Plaintiff's actionable claims in this matter are, at best, claims of gender-based discrimination and/or retaliation. And, unlike claims of sexual harassment, claims of gender-based discrimination are not precluded from arbitration by the EFAA, no matter how Plaintiff tries to twist her allegations to fit within the limited parameters of the EFAA. Second, even if the Court were to construe Plaintiff's allegations as a claim for "sexual harassment," those allegations fail to state a plausible claim for relief because the Complaint is completely devoid of allegations of a single sexual remark or any other alleged sexual conduct by the Defendant. As a result, the EFAA simply does not apply.

Furthermore, even if the EFAA were applicable here (it is not), the statute's effect would be confined to Plaintiff's purported "sexual harassment" allegations. The contracting parties specifically agreed that even if their arbitration agreement were held partially unenforceable, it would still be enforceable in all other respects. Controlling law requires giving effect to clear and unambiguous severability clauses of this nature. The same conclusion would apply even if the arbitration agreement lacked a severability clause. By its terms, and as its legislative history confirms, the EFAA only addresses arbitration in relation to alleged sexual harassment or sexual assault. So even if Plaintiff stated a claim for sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") or the New York City Human Rights Law ("NYCHRL") (which she has not), the EFAA would still require enforcing the Arbitration Agreement with respect to all allegations in the Complaint other than the sexual harassment allegations.

For these reasons, Defendant respectfully requests that the Court compel Plaintiff to individually arbitrate her claims in accordance with the Arbitration Agreement and applicable law, and stay this action pending resolution of Plaintiff's claims in arbitration.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiff Agreed to Arbitrate her Employment-Related Disputes with JPMC.

Plaintiff began working for JPMorgan Securities LLC in July 2019.  ECF No. 1-3, Declaration of Kimberly Dean ("Dean Decl.") ¶ 3; *see also* Compl. ¶ 5.  As a condition of that employment, Plaintiff received and accepted an offer letter, which included a detailed, multi-paragraph explanation of JPMC's Arbitration Agreement.  Dean Decl. ¶¶ 3-4 & Ex. A.  Plaintiff electronically signed, and thereby accepted, the offer letter and Arbitration Agreement on December 13, 2018.  *Id.*

The Arbitration Agreement establishes a mandatory arbitration process for claims made by employees arising out of their employment or termination of employment with a JPMorgan entity. *Id.* Ex. A, at p. 6-10.  More specifically, the terms of the Arbitration Agreement state that, "[a]s a condition of and in consideration of [Plaintiff's] employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries," any and all "Covered Claims" between Plaintiff and JPMC "shall be submitted to and resolved by final and binding arbitration in accordance with [the] Agreement." *Id.* Ex. A., at p. 6.  Moreover, by its terms, the Arbitration Agreement defines "Covered Claims" as encompassing "all legally protected employment-related claims…which arise out of or relate to my employment or separation from employment with [JPMC]…including, but not limited to, claims of employment discrimination or harassment…and retaliation[.]" *Id.*

The Arbitration Agreement also clearly explains how an employee can initiate the arbitration process, which is administered by the American Arbitration Association.  *Id.* Ex. A., at p. 7-8.  It further explains what to expect during the arbitration proceedings, including the procedure to be followed and that all ordinary and reasonable administrative expenses of the arbitration will be paid by JPMC.  *Id.* Ex. A, at p. 8.  "If any part of [the] Agreement is held to be

void or unenforceable, the remainder of the Agreement will be enforceable and any part may be severed from the remainder as appropriate, to the extent permitted by law." *Id.* Ex. A, at p. 9.

On or about June 1, 2021, Plaintiff began working for JPMorgan Chase Bank, N.A. as a Corporate Responsibility Analyst. Dean Decl. ¶ 8. Prior to her start date, Plaintiff received and accepted an offer letter, which advised her that her formal legal employer was now JPMorgan Chase Bank, N.A. and that she remained subject to all prior agreements, including, but not limited to, the Arbitration Agreement. *Id.* & Ex. B.

Plaintiff was bound by the terms of the Arbitration Agreement and actively accepted the terms upon executing the Agreement, and by accepting and continuing employment with JPMC. However, instead of submitting her claims to binding arbitration as required, Plaintiff improperly filed the instant Complaint on May 27, 2025, alleging claims of employment discrimination and retaliation. Supreme Court of New York, Doc. No. 1. JPMC removed this action on July 23, 2025. ECF No. 1.

### B.    Plaintiff's Allegations.

In breach of her agreement to arbitrate, Plaintiff commenced this litigation against Defendants. She asserts a variety of employment-related discrimination and retaliation claims under the NYSHRL and the NYCHRL. Her discrimination claims are based on her sex (female), race (Black), and disability (mental illness). *See* Compl. ¶¶ 4, 8, 62. Importantly, Plaintiff has not asserted a cause of action for harassment – her two causes of action under the NYSHRL and NYCHRL merely cite that Defendant "discriminated against Plaintiff because of her gender and race and disability and retaliated against her for complaining of discrimination." *Id.* at ¶¶ 62 and 64.

4

Plaintiff claims that she "endured persistent racial gender [sic] harassment, as a Black woman, and bullying from colleagues and managers." *Id.* at ¶ 8. However, Ms. Azamati's specific allegations tell a different story:

- She experienced "racial microaggressions from her colleagues" prior to February 2021 (¶ 10);

- She experienced "heightened scrutiny regarding her work and whereabouts, including constant harassment as to whether work tasks were being completed despite no history of underperformance" (¶ 16);

- After she was issued a performance improvement plan, she was "ostracized by her superiors and co-workers and subjected to false work criticism" (¶ 20);

- Her former manager's delay in feedback created "a challenging and hostile work environment for her growth and hindered her ability to respond to performance issues" (¶ 28); and

- An Executive Director, Diana Kolar made "troubling comments about a Black female employee who sat next to other members of her team" in a Microsoft Teams chat among the DC team members, including: "you guys, we need to slowly kick this other lady out of our row;" "idk how we can do it;" "but book strategically and claim the whole row for ourselves;" and "maybe she'll go on vacation soon." This was illustrative of "similar harassment and bullying" Plaintiff had experienced from Ms. Kolar. (¶ 33).

She also alleges she experienced comments from Joe Bateman, a Vice President at JPMC, including:

- Mr. Bateman telling a colleague that Plaintiff "does not want to work" (¶ 21);

- After asking for clarity on a work directive, Mr. Bateman "walked over to [Plaintiff]'s desk in the office and directed anger and hostility towards [Plaintiff] by raising his voice at her" (¶ 47); and

- She heard from another colleague that Mr. Bateman was recommending a Latina colleague be placed on a PIP and he made comments that this employee's work product was horrendous and that he did not believe she should "hold her rank as an associate at the firm" (¶ 48).

Plaintiff's other allegations purportedly support a gender discrimination/disparate treatment claim:

- She was denied PTO "granted to white colleagues" and was subjected to "hourly tracking," a requirement not imposed on colleagues of "other races or genders" (¶ 13);

- Her 2023 year-end review "falsely and vaguely painted [Plaintiff] as incompetent" to "ultimately push [Plaintiff] out of her position" (¶ 18);

- She was given an "unwarranted dissatisfactory rating" on her mid-year review and placed on a performance improvement plan (¶ 19), that "white male team members were not held to the same standards" (¶ 25), and the investigation into the performance coaching was to determine "whether race had played a role in this decision" (¶ 31);

- She was contacted by her boss outside of business hours, which was holding her to a higher standard that others (¶ 26);

- She was left out of events and meetings (¶¶ 36-37, 42, 46, 49-50); and

- She was passed over for a pay raise two years in a row, and she was paid less than white male employees for the same work (¶¶ 54-55).

Based on these allegations, Plaintiff's complaint does not articulate a sexual harassment claim, no matter how much she attempts to characterize her claims as such. In truth, she asserts two counts of sex, race, and disability discrimination and retaliation under the NYSHRL and the NYCHRL. Although Plaintiff labels conduct throughout the Complaint as "harassment" and "hostile," Plaintiff does not assert a separate count of sexual harassment under any applicable law.

## III.  LEGAL ARGUMENT

### A.  The Court Should Compel Arbitration because Plaintiff Entered into a Valid Arbitration Agreement that Covers Her Claims.

A motion to compel arbitration first requires the Court to address whether the parties entered into a valid arbitration agreement and, if so, whether the dispute at issue falls within the scope of the agreement. *Padro v. Citibank, N.A.*, No. 14-cv-2986, 2015 WL 1802132, at *3 (E.D.N.Y. Apr. 20, 2015). Both requirements are met here.

#### 1.  The Parties Entered into a Valid Arbitration Agreement.

First, there is no dispute that Plaintiff and JPMC entered into a valid arbitration agreement. The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract." 9 U.S.C. § 2; *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Here, the parties' agreement to arbitrate is contained in Plaintiff's offer letter, which Plaintiff signed as a condition of her employment, before she joined JPMC, which was again affirmed when she took on her Corporate Responsibility role. *See supra* Section II.A. In doing so, she unquestionably entered into a valid, unconditional, and enforceable written agreement to arbitrate the employment-related claims she seeks to adjudicate in her Complaint. Plaintiff had adequate notice of, assented to, and became bound by the Arbitration Agreement. *See e.g., Tarulli v. Circuit City Stores, Inc.*, 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling arbitration where "[t]he Plaintiff voluntarily signed the [arbitration] Agreement and knowingly accepted employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration"); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) ("[P]arties are presumed to know the contents of the agreements they have signed.") (*citing Dasz, Inc. v. Meritocracy Ventures, Ltd.*, 969 N.Y.S.2d 653, 655 (App. Div. 2013)).

Plaintiff also received sufficient and valid consideration for the agreement. *See UBS Sec. LLC v. Prowse*, No. 20-cv-217, 2020 WL 433859, at *3 (S.D.N.Y. Jan. 27, 2020) ("The respondent's continued employment for the petitioner and the mutual obligation of the parties to submit covered claims to arbitration establish sufficient consideration for the Agreement under New York law."); *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) (collecting cases) ("Mutual promises to arbitrate, while not necessary as consideration to support an agreement to arbitrate, can be sufficient consideration to support an arbitration agreement[.]"); *Stern v. Espeed, Inc.*, No. 06-cv-958, 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006) ("continuation of employment alone is sufficient consideration to enforce" arbitration agreement). Therefore, the Arbitration Agreement is valid and enforceable.

> 2.    *This Dispute Falls Within the Scope of The Agreement and is Arbitrable.*

Next, Plaintiff's claims all fall within the scope of the arbitration agreement. She asserts claims under the NYSHRL, and the NYCHRL. Each of these claims arise from Plaintiff's employment at JPMC, and the Arbitration Agreement undoubtedly covers them. The Arbitration Agreement unambiguously states that it applies to "all legally protected employment-related claims, …which arise out of or relate to my employment or separation from employment with [JPMC]…including, but not limited to, claims of employment discrimination or harassment…and retaliation[.]" Dean Decl., Ex. A, at 6. Thus, the Arbitration Agreement indisputably covers Plaintiff's claims against JPMC. *See, e.g.*, *Feuer v. Stoler of Westbury, Inc.*, No. 20-cv-6094, 2021 WL 4820605, at *4 (E.D.N.Y. Oct. 15, 2021) (compelling arbitration of NYSHRL and other claims because the arbitration clause broadly covered employment-related claims).

**B.    The FAA Requires Enforcing Plaintiff's Arbitration Agreement.[2]**

Because Plaintiff agreed to arbitrate this dispute, the only remaining question is whether her agreement is somehow unenforceable. It is not. Plaintiff's agreement must be enforced under

---

[2] While Plaintiff will argue that the FAA does not preempt New York State Law, CPLR 7515, as Plaintiff acknowledges, this Court has held that the FAA does in fact preempt CPLR 7515. *See, e.g.*, *Charter Comms, Inc. v. Garfin*, No. 20 Civ. 7059 (KPF), 2021 WL 694549, at *14 (S.D.N.Y. Feb. 23, 2021); *Gilbert v. Indeed, Inc.*, No. 20 Civ. 3826 (LJL), 2021 WL 169111, at *13-15 (S.D.N.Y. Jan. 19, 2021); *White v. WeWork Cos.*, No. 20 Civ. 1800 (CM), 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020); *Latif v. Morgan Stanley & Co.*, No. 18 Civ. 11528 (DLC), 2019 WL 2610985, at *3-4 (S.D.N.Y. June 26, 2019). Additionally, Plaintiff's agreement was signed prior to the amendment of CPLR 7515, applying the prohibition on arbitration generally to discrimination claims, not just sexual harassment claims. *See* Dean Decl., Ex. A. CPLR 7515 is not applied retroactively and, as discussed below, Plaintiff has not alleged a sexual harassment claim, which was the only claim CPLR 7515 covered at the time she entered into it. *See, e.g.,* CPLR 7515 (originally enacted on July 11, 2018); *Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*, No.    , 2023 WL 2138693, at *5 (S.D.N.Y. Feb. 21, 2023) (Cronan, J.) (citing *Newton v. LVHM Moet Hennessy Louis Vuitton Inc.*, 192 A.D.3d 540, 541 (N.Y. App. Div. 2021) (not addressing argument of enforceability under CPLR 7515 because the law only applies prospectively and the plaintiff entered into the arbitration agreement before the law was enacted).

the FAA, which the parties selected to govern their arbitration agreement.  Dean Decl., Ex. A, at pg. 6.

The FAA's strong pro-arbitration policy requires courts to "rigorously" enforce arbitration agreements according to their terms.  *Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 506 (2018) (citation omitted).  In particular, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri,* 144 S. Ct. 1173, 1178 (2024); *see also, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").  In addition, Section 4 directs courts to enter an order directing arbitration to proceed in the manner provided for in the arbitration agreement where one side refuses to arbitrate.  9 U.S.C. § 4.  And, "[i]n accordance with the 'strong federal policy favoring arbitration as an alternative means of dispute resolution,' [courts] resolve any doubts concerning the scope of arbitrable issues 'in favor of arbitrability.'"  *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (citation omitted).  Courts thus "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (citation omitted).

### C.    The EFAA Does Not Exempt Plaintiff from Submitting Her Claims to Arbitration.

Plaintiff will attempt to evade the FAA by invoking the recent EFAA amendments.  Those amendments create an exception to the FAA's normal rule that arbitration agreements are valid and enforceable with respect to certain sexual assault or sexual harassment claims or disputes:

> Notwithstanding any other provision of this title, at the election of
> the person alleging conduct constituting a sexual harassment dispute

9

> or sexual assault dispute, or the named representative of a class or
> in a collective action alleging such conduct, no predispute
> arbitration agreement or predispute joint-action waiver shall be valid
> or enforceable with respect to a case which is filed under Federal,
> Tribal, or State law and relates to the sexual assault dispute or the
> sexual harassment dispute.

9 U.S.C. § 402(a); *see also* 9 U.S.C. § 2 (explaining that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4").

This exception does not apply because (1) Plaintiff has failed to allege conduct constituting a sexual harassment dispute; and (2) even if Plaintiff's allegations were of the kind that *could* constitute sexual harassment (they are not), she has not plausibly alleged actionable harassment under applicable law. Finally, even if the Court determines that Plaintiff has stated a viable claim for sexual harassment, the FAA would still require enforcing her arbitration agreement with respect to all other claims.

### 1.    The EFAA Does Not Apply to Plaintiff's Gender-Based Discrimination Claims.

By its terms, the EFAA applies only when a plaintiff is "alleging conduct constituting a sexual harassment dispute or sexual assault dispute." 9 U.S.C. § 402(a). Of these two categories, only the first—sexual harassment dispute—is even arguably relevant to Plaintiff's allegations in the Complaint. The statute defines "sexual harassment dispute" to mean "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). Unlike claims of sexual harassment, claims of gender-based discrimination are not precluded from arbitration by the EFAA. Significantly, New York federal courts have recognized that gender-based discrimination claims, like the claims at issue here, are ***not*** covered by the EFAA, and that conclusory allegations of "harassment" cannot somehow transform gender-based discrimination claims that are otherwise subject to binding arbitration into exempt sexual

harassment claims under the EFAA.  *See Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 258 (S.D.N.Y. 2024) ("[N]ot all gender discrimination is sexual harassment.  And while [the plaintiff] asserts that she was 'subjected to a hostile work environment' and 'harassed' by [a manager's] mistreatment of her, such conclusory labels are not dispositive—and do not alter the facts alleged [in the complaint]")..  Indeed, courts have held that allegations of disparate treatment based on sex also do not articulate a claim of sexual harassment and are more appropriately viewed as supporting a gender discrimination/disparate treatment claim.  *See, e.g.*, *Dixon v. Dollar Tree Stores, Inc*., No. 22-cv-131S, 2023 WL 2388504, at *7 (W.D.N.Y. Mar. 7, 2023) ("This Act also does not preclude arbitration of claims under other sex and age discrimination claims, such as Dixon's allegations of disparate treatment because of her age and gender, that do not allege sexual assault or harassment."); *Faith v. Khosrowshahi,* No. 21-cv-6913, 2023 WL 5278126, at *7 n.5 (E.D.N.Y. Aug. 16, 2023) (An allegation of employment discrimination was not synonymous with "sexual harassment ... that would trigger the EFAA's provisions."); *Moulds v. Skillcycle, Inc*., No. 23-cv-4873, 2024 WL 2206464, at *1 n.1 (E.D. Pa. Mar. 27, 2024) (under federal law, "sex discrimination differs from sexual harassment.").

As the Court in *Singh* explained, "[T]hough courts have not had much opportunity to draw a clear line between "discrimination" and "harassment," when sexual harassment claims have been litigated under the NYCHRL, successful plaintiffs have alleged conduct or language of the same kind of romantic, sexual, or lewd nature that the agency has described in its guidance materials." *Singh,* 2024 WL 3904799, at *5.  This distinction between gender-based discrimination and sexual harassment is reinforced by the agency guidance issued by the U.S. Equal Employment Opportunity Commission ("EEOC"), New York State Division on Human Rights, and New York City Commission on Human Rights.  For example, the EEOC defines "sexual harassment" as

unwelcome sexual advances, requests for sexual favors, and other verbal or physical harassment of a sexual nature. Sexual Harassment, U.S. Equal Employment Opportunity Commission https://www.eeoc.gov/sexual-harassment (last visited August 6, 2025).  The New York City Commission's guidance explains, "sexual harassment is unwelcome verbal or physical behavior" that "can include unwanted touching; offensive and suggestive gestures or comments; asking about a person's sex life or making sexualized remarks about a person's appearance; sexualizing the work environment with imagery or other items; or telling sexual jokes."  Stop Sexual Harassment Act, NYC Commission on Human Rights, https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (last visited August 6, 2025)  The New York State Division on Human Rights provides similar guidance (e.g., examples of sexually harassing conduct include, "Verbal harassment or abuse in the form of a pattern of sexual comments or questions" and "unnecessary or inappropriate physical contact."  Sexual Harassment, Filing a Complaint at the Division – Sexual Harassment, https://dhr.ny.gov/system/files/documents/2024/04/nysdhr-sexual-harassment-brochure_0.pdf (last visited August 6, 2025)).

Here, Plaintiff's Complaint is completely devoid of allegations of a single sexual remark or any other alleged sexual conduct by any of the Defendants.  *See supra* Section II.B.  Rather, the crux of her complaint is that she was treated differently from white male employees, including that she was held to different performance standards, excluded from meetings, and paid less for the same work.  These allegations do not form the basis of a "sexual harassment" claim.  *See Singh*, 2024 WL 3904799, at *6 (finding Plaintiff failed to allege "sexual harassment" as opposed to "gender discrimination" where alleged wrongdoer mistreated her by crediting male employees with some of her accomplishments, ignored her contributions, assigned projects to male employees, and "inappropriately questioned" whether her pregnancy would impact her job

commitment).  As a result, the EFAA—a law intended to empower and protect actual victims of sexual harassment and sexual assault—does not apply.

### 2.    *The EFAA Only Applies to Plausible Claims of Sexual Harassment.*

Even if the Court were to construe Plaintiff's gender discrimination claim as a sexual harassment claim, Plaintiff's attempt to evade her obligation to arbitrate should still fail.  Plaintiff has failed to allege a plausible claim for sexual harassment under the only recognized theory of sexual harassment even potentially applicable here under either the NYSHRL or the NYCHRL— hostile work environment, as Plaintiff does not even purport to allege *quid pro quo* harassment. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-65 (1986)) ("A plaintiff seeking relief against an employer for sexual harassment in the workplace can proceed under two theories*: quid pro quo* harassment and a hostile work environment.").

Courts widely recognize that the EFAA applies only when the plaintiff has plausibly pleaded the purported sexual harassment claim.  *See, e.g.*, *Singh,* 2024 WL 3904799, at *2 (holding that EFAA was inapplicable where the complaint failed to plausibly plead sexual harassment); *Yost v. Everyrealm*, 657 F. Supp. 3d 563, 588 (S.D.N.Y. 2023) (same).  A plaintiff does not "allege" conduct constituting a violation of a sexual harassment law if the conduct does not state a claim for sexual harassment under that law.[3]  That conclusion follows from Congress's decision to formulate "sexual harassment dispute" in terms of an "alleged" violation of law:

---

[3] Courts in other jurisdictions have followed the same rule.  *See, e.g.*, *Gonzalez v. Carnival Corp.*, No. 24-cv-21361, 2024 WL 4863892, at *5 (S.D. Fla. Nov. 22, 2024) (granting motion to compel arbitration); *Mitchell v. Raymond James & Assocs., Inc.*, No. 23-cv-2341, 2024 WL 4486565, at *5 (M.D. Fla. Aug. 23, 2024), *R&R adopted*, 2024 WL 4263151 (M.D. Fla. Sept. 23, 2024) (same); *Johannessen v. JUUL Labs, Inc.*, No. 23-cv-3681, 2024 WL 3173286, at *4 (N.D. Cal. June 24, 2024) (same); *Holliday v. Wells Fargo Bank, N.A.*, No. 23-cv-418, 2024 WL 194199, at *5 (S.D. Iowa Jan. 10, 2024) (same); *K.T. v. A Place for Rover*, No. 23-cv-2858, 2023 WL

> although the term "alleged" commonly refers to an allegation of fact, as used in [9 U.S.C.] § 401(4), the term adds a legal dimension to the required allegation.  And § 401(4)'s concluding clause identifies the legal measuring stick.  The conduct must have been "alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  Congress's decision to add those qualifying words is significant. … This plain language makes the EFAA inapplicable where there has not been an allegation that such conduct violated a law prohibiting sexual harassment.

*Yost*, 657 F. Supp. 3d. at 585 (footnote omitted).  Under longstanding federal pleading standards, allegations are assessed under the *Iqbal*/*Twombly* plausibility test.  *Id.*  Thus, when Congress uses the term "allege" or "alleged" in a statute, courts (including the Second Circuit) normally interpret the statute in light of the background plausibility pleading test by which federal complaints' allegations are judged.  *Id.* at 587 (citing, *inter alia*, *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021)); *cf. Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) ("When a statutory term is 'obviously transplanted from another legal source,' it 'brings the old soil with it.'" (citation omitted)).  This approach furthers the purposes of both the EFAA and the FAA more generally, as it "balances a healthy respect for the EFAA's purpose in 'empower[ing] sexual harassment claimants to pursue their claims in a judicial, rather than arbitral, forum' while also heeding the FAA's purpose as a 'liberal federal policy favoring arbitration.'"  *Singh*, 2024 WL 3904799, at *2.

The Court therefore must evaluate the sufficiency of Plaintiff's allegations against the plausibility standard.  The Court should accept all well-pleaded facts—but not legal conclusions—as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Attaching labels to facts or reciting the elements of a claim does not suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

7167580, at *5 (E.D. Pa. Oct. 31, 2023) (same), *reconsideration denied*, 2024 WL 1356221 (E.D. Pa. Mar. 29, 2024);

3.    *Plaintiff Failed to State a Plausible Claim for Sexual Harassment.*

Under Title VII, a plaintiff alleging a hostile work environment theory of sexual harassment must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harge v. City of N.Y.,* No. 21-cv-2293, 2022 WL 17481819, at *2 (2d Cir. 2022) (citation omitted).  Under the NYSHRL and NYCHRL, a plaintiff must show that "she has been treated less well," or, put differently, faced "unwanted [] conduct." *Yost*, 657 F. Supp. 3d at 579.  In the particular context of a sexual harassment claim, the "conduct" that plaintiff alleges to plead she was treated "less well" must be premised on unwelcome verbal or physical behavior of a sexual nature.  *See supra* Section III(B)(1).  That means, at a baseline, Plaintiff must allege facts from which the Court can plausibly infer that she was subjected to unwelcome sexual conduct.

Here, Plaintiff claims her colleagues subjected her to various instances of offensive conduct and mistreatment (allegations that Defendant denies). But, critically, none of their conduct is plausibly alleged to be sexual conduct for purposes of a viable sexual harassment claim.  Indeed, Plaintiff herself characterizes the alleged "harassment" and "bullying" by her colleagues as racial microaggressions (Compl. ¶ 10); heightened scrutiny and inequitable performance management (¶¶ 16, 20, 28); comments about getting another woman to leave a seat (¶ 33); and comments from Mr. Bateman about her work ethic and raising his voice at her (¶¶ 21, 47).  These allegations do not constitute unwelcome sexual conduct.  The mere fact that Plaintiff describes the purported conduct as "harassment" and a "hostile work environment" is conclusory and cannot be given any weight. *Pungitore v. Barbera*, 506 F. App'x 40, 42 (2d Cir. 2012) (summary order) ("A court must first ignore mere conclusory statements." (internal quotations omitted). As a result, she has failed to plausibly state a sexual harassment claim.) *See e.g., Stinson v. City Univ. of N.Y.*, No. 17-cv-

3949, 2018 WL 2727886, at *10 (S.D.N.Y. June 6, 2018) (NYCHRL claim not plausibly pled where plaintiff did not allege comments were "based on" protected characteristic because "[a]t no point in his lengthy complaint does plaintiff allege that any defendant commented on his race in any way"). *Yost.,* 657 F. Supp. 3d at 579 (finding remarks on the topic of sex "however inappropriate or infantile, are disconnected from any protected characteristic of [Plaintiff's].") *Goodwine v. City of N.Y.*, No. 15-cv-2868, 2016 WL 3017398, at *8-9 (S.D.N.Y. May 23, 2016) (dismissing NYCHRL claim where supervisor referred to plaintiff "as a 'cunt' and 'bitch'" and "was once asked rhetorically if she was 'smoking crack'" but no allegations connected conduct to gender or race).

Similarly, Plaintiff's vague and conclusory assertions that she was treated differently (*e.g.,* that she was denied PTO (Compl. ¶ 13), subjected to different performance standards (¶¶ 13, 25-26), left out of meetings (¶¶ 36-37, 42, 46, 49-50), and passed over for a raise and paid less for the same work (¶¶ 36-37) are similarly insufficient to support a claim of harassment. *See e.g., Fleming v. MaxMara USA, Inc*., 371 F. App'x 115, 118-19 (2d Cir. 2010) (summary order) (holding that hostile acts "not facially related" to a protected characteristic — such as "wrongly exclud[ing] [the plaintiff] from meetings, excessively criticiz[ing] her work, refus[ing] to answer work-related questions, arbitrarily impos[ing] duties outside of her responsibilities, thr[owing] books, and sen[ding] rude emails" — are insufficient, even alongside a racist remark).

Furthermore, even if Plaintiff's allegations involved sexual conduct (they do not), they nevertheless fail to state a plausible claim of sexual harassment because they are isolated incidents that fall well below the threshold for actionable harassment. *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 593, 604 (S.D.N.Y. 2011) (dismissing sexual harassment claims for failure to state a claim because allegations of repeated comments that women "should not be [police officers]"

16

and should "stay at home" to "make babies," "while deeply offensive," amounted to nothing more than "petty slights and inconveniences").

For these reasons, Plaintiff has failed to state a plausible claim for sexual harassment, and so the EFAA should not apply.

### 4.    *Plaintiff's NYCHRL Claim is Not Encompassed By The EFAA.*

Although Plaintiff fails to state a sexual harassment claim under Title VII, the NYSHRL or the NYCHRL, the Court need not even analyze the NYCHRL claim before compelling arbitration.  As quoted above, the EFAA defines "sexual harassment dispute" in terms of whether the alleged conduct "constitute[s] sexual harassment under applicable *Federal, Tribal, or State* law."  9 U.S.C. § 401(4) (emphasis added).  The only federal, tribal, or state sexual harassment law invoked by Plaintiff is the NYSHRL.  Otherwise, her sexual harassment claims rest on the NYCHRL.  But by its plain terms, the EFAA does not consider whether she plausibly pleaded a sexual harassment claim under the NYCHRL, which is part of New York City's municipal administrative code.  New York City is not a state, and its laws are not state law.  Under the ordinary meaning of the EFAA's terms, city or local laws are out of scope.  *See, e.g.*, *Moody v. Flowers*, 387 U.S. 97, 101 (1967) (interpreting provision that referred to a "[State] statute" as "not encompass[ing] local ordinances or resolutions"); *United States v. City & Cnty. of Denver*, 100 F.3d 1509, 1513 (10th Cir. 1996) ("If Congress had wished to include local zoning ordinances within the definition of 'state law' it would surely have so stated."); *cf. Palmore v. United States*, 411 U.S. 389, 395 (1973) ("A reference to 'state statutes' would ordinarily not include provisions of the District of Columbia Code, which was enacted, not by a state legislature, but by Congress, and which applies only within the boundaries of the District of Columbia.").

Defendant acknowledges that one district court has held to the contrary, and a few other courts have followed that ruling, but its reasoning is unpersuasive.  In *Yost*, the court read "State

law" to include municipal law, reasoning that in other statutes, Congress sometimes defines state law to include municipal law or defines "state" to include a state's political subdivisions. *Yost*, 657 F. Supp. 3d at 578 n.10 (citing 10 U.S.C. § 2332(1), 15 U.S.C. § 1692a(8), and 18 U.S.C. § 1961(2), among others). The *Yost* court saw no indication that Congress affirmatively intended to exclude municipal law from the EFAA's reach. *Id.* Yet Congress's practice in the other statutes cited by *Yost* shows that when Congress wants to define "state" to include municipalities, it knows how to do so and does so explicitly. *See id.* In addition, the court cited one example of an explicit exclusion of municipalities from a statutory definition of "State." *See* 42 U.S.C. § 4762(3). Obviously when Congress is clear one way or the other, and expressly addresses municipalities, courts should follow those express instructions. But the issue here is how to interpret provisions that refer to states but are silent about municipalities. The *Yost* court identified no cases holding that references to states should generally be construed to include municipalities or local governments. The "cardinal canon" of statutory construction is that "a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). If anything, Congress's frequent efforts to include an express definition when it intends for "state" to encompass municipalities suggests that a reference to "state law" that is not accompanied by a reference to municipalities is not intended to reach municipalities. Otherwise it would be unnecessary for Congress to include an express reference to municipalities in the many statutes in which it has done so. Congress's express enumeration of federal, tribal, and state laws, without any mention of local law, suggests that Congress's omission of local law was "by deliberate choice, not inadvertence." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 233 (2011) (applying "[e]xpressio unius, exclusio alterius" canon of interpretation).

The EFAA's text does not refer to municipal law, even though Congress routinely adds a clarifier that "State law" includes municipal law when it desires that result.  Given the statutory text and context, Plaintiff's NYCHRL claim is not within the EFAA's applicability.

**D.    Even If the EFAA Applies, Plaintiff Still Must Arbitrate Her Allegations Relating to Discrimination and Retaliation.**

Notwithstanding all of the arguments to the contrary, even if the Court were to conclude that Plaintiff has sufficiently pleaded a sexual harassment claim, it should nonetheless compel Plaintiff's non-sexual harassment claims to arbitration.  *See, e.g.*, *O'Sullivan v. Jacaranda Club, LLC*, 224 A.D. 3d 629, 630 (1st Dep't 2024) (ordering arbitration of claims that did not relate to sexual harassment claim); *Mera v. SA Hospitality Grp.*, *LLC*, 675 F. Supp. 3d 442, 447-48 (S.D.N.Y. 2023) (same); *Silverman v. DiscGenics, Inc.*, No. 22-cv-354, 2023 WL 2480054, at *3 (D. Utah Mar. 13, 2023) (same).

*1.    Controlling Law Requires Giving Effect to The Severability Clause.*

To start, the parties specifically agreed through the Arbitration Agreement's severability clause that "[i]f any part of this Agreement is held to be void or unenforceable, the remainder of the Agreement will be enforceable and any part may be severed from the remainder as appropriate, to the extent permitted by law."  Dean Decl., Ex. A, at 9.  When an arbitration agreement is partly invalid or unenforceable, controlling law requires giving effect to severability clauses "rather than void the entire agreement."  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) (quoting *Brady v. Williams Capital Grp., L.P.*, 64 A.D.3d 127, 137 (1st Dept. 2009)); *see, e.g.*, *Crespo v. Kapnisis*, No. 21-cv-6963, 2022 WL 2916033, at *5 (E.D.N.Y. July 25, 2022) ("Where a court identifies a provision that precludes a plaintiff from pursuing his statutory rights, the proper remedy 'is to sever the improper provision of the arbitration agreement, rather than void the entire agreement.'" (citation omitted)).

Enforcing severability clauses furthers "the state and federal policy favoring arbitration" and avoids "overriding the intent of the parties to arbitrate." *Brady*, 64 A.D.3d at 137-38. Even if the Court declines to enforce the application of the parties' arbitration agreement to Plaintiff's purported sexual harassment allegations, the Court can and should enforce the arbitration agreement in all other respects. "Based on [the severability] clause, [Defendant is] entitled to enforce the agreement insofar as it mandate[s] arbitration of [Plaintiff's non-sexual harassment] claim[s]." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 662 (2022).

### E.    The EFAA Itself Supports Enforcing the Parties' Arbitration Agreement in Relation to Plaintiff's Non-Sexual Harassment Claims.

Even if the Arbitration Agreement lacked a severability clause, the FAA and EFAA would still require arbitration of the non-severable claims. The long-settled background rule is that "[w]hen a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" *Mera*, 675 F. Supp. 3d at 446 (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011)); *see also Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("If some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court."). The text, context, and purpose of the EFAA all confirm that the EFAA does not override this rule.

The EFAA provides in pertinent part that "at the election of the person alleging conduct constituting a sexual harassment dispute," the arbitration agreement will not "be valid or enforceable *with respect to a case which* is filed under Federal, Tribal, or State law and *relates to ... the sexual harassment dispute*." 9 U.S.C. § 402(a) (emphasis added). The italicized phrases make clear that the EFAA was not designed to invalidate a particular arbitration agreement in its

20

entirely. Rather, the agreement's unenforceability is limited to certain circumstances only. As the Southern District of New York has explained, the effect of this language is that "an arbitration agreement executed by an individual alleging conduct constituting a sexual harassment dispute is unenforceable only to the extent that the case filed by such individual 'relates to' the sexual harassment dispute." *Mera*, 675 F. Supp. 3d at 447.

Some courts have mistakenly interpreted the phrase "with respect to a case" to mean that no claim in a given judicial proceeding may be compelled to arbitration if the complaint states a sexual harassment claim. *See Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558-61 (S.D.N.Y. 2023). But this interpretation of "with respect to a case" gets the point of that phrase exactly backwards. As noted above, that phrase has a limiting function: it ensures that courts do not invalidate an arbitration agreement altogether, in all circumstances, in every matter, in every forum. What the phrase means is that the arbitration agreement is invalid only in that case and not in any others. Yet the *Johnson* court mistakenly construed this limiting language as expanding the EFAA's effect beyond sexual harassment disputes.

The *Johnson* court's reading is incorrect because it denies effect to the second limiting phrase within this provision, "which … relates to … the sexual harassment dispute." 9 U.S.C. § 402(a). This limiting language was included to ensure that an agreement would be unenforceable under the EFAA only in relation to the sexual harassment dispute. But the *Johnson* court's interpretation of "with respect to a case"—as requiring invalidation of the agreement in an entire judicial proceeding, not just the allegations that relate to sexual harassment, *see Johnson*, 657 F. Supp. 3d at 561—leaves the "relates to" qualification superfluous. On that approach, Congress could simply have said: "at the election of the person alleging conduct constituting a sexual harassment dispute," the arbitration agreement will not "be valid or enforceable with respect to a

case which is filed under Federal, Tribal, or State law."  Such a statute would have exactly the same effect as the *Johnson* court's interpretation of the actual statute.  But in qualifying "case" with the additional phrase, "and relates to … the sexual harassment dispute," Congress surely meant to do something.  *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (citation omitted)).  Indeed, Congress surely meant to limit the allegations that can be kept out of arbitration.  It is no response that this language ensures the EFAA is confined to cases that have some sexual harassment allegations.  An earlier phrase in the provision, which confines Section 402(a) to cases where the plaintiff "alleg[es] conduct constituting a sexual harassment dispute," 9 U.S.C. § 402(a), already accomplishes that goal.  The only way to give additional effect to "and relates to … the sexual harassment dispute" is to construe it as imposing a further limitation, beyond needing to allege a sexual harassment dispute.  The Court should reject the *Johnson* approach because it "would effectively read the limiting language in § [402(a)] out of the statute, a conclusion that would violate basic principles of statutory interpretation."  *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995).

The *Johnson* court's reliance on the single word "case" also ignores the multiple meanings that the word can have in legal usage.  The word can mean a legal action as an entire judicial proceeding, as the *Johnson* court noted, but it can also refer to the facts and arguments supporting a particular legal outcome.  *See, e.g.*, Oxford English Dictionary (2024) (definition 7.a: "[a] legal action, *esp*. one to be decided in a court of law; an action or suit which has been decided and may be cited"; definition 7.b: "The sum of arguments presented by one side in a legal action; the facts forming the basis for such arguments"); Merriam-Webster Dictionary (2024) (definition 5.a: "a

suit or action in law or equity"; definition 5.b(1): "the evidence supporting a conclusion or judgment"); Bryan A. Garner, Garner's Dictionary of Legal Usage 862 (3d ed. 2011) ("*Case* can apply either to the entire proceedings <the case has been pending for 19 months> or to the merits of the action from either side's point of view <the plaintiff has a good case> <the defendant has a good case>."). In the first sense, Plaintiff's case relating to sexual harassment would refer to the entire judicial proceeding captioned *Azamati v. JPMorgan Chase & Co.*, No. 1:25-cv-06046 (S.D.N.Y.). In the second sense, Plaintiff's case relating to sexual harassment would refer to the evidence and legal theories she could muster in connection with the alleged sexual harassment. Defendant has argued above that Plaintiff has no sexual harassment case in the second sense, even taking the Complaint's well-pleaded allegations as true. But the key point here is that one can refer to Plaintiff's sexual harassment case as the allegations her Complaint makes to support her sexual harassment claims. One need not use the word "case" only in relation to this judicial proceeding as a whole, as the *Johnson* court assumed.

At a minimum, the multiple possible definitions for "case" and need to avoid superfluity show that this statutory language can be read in multiple ways. And when a statute is ambiguous, courts look to legislative history. The legislative history refutes the *Johnson* approach. The EFAA was passed by overwhelming bipartisan votes in both houses of Congress. But leading up to those votes, minority-party senators expressed concerns that "[h]arassment and assault allegations are very serious and should stand on their own" and that the statute "not be used as a mechanism to move employment claims that are unrelated to these important issues out of the current system." 168 Cong. Rec. S624-01, S625 (daily ed. Feb. 10, 2022) (statement of Sen. Jodi Ernst). For example, Senator Gillibrand, the lead Democratic sponsor of the bill in the Senate, explained that "[t]he bill plainly reads … that only disputes that relate to sexual assault or harassment conduct

can escape the forced arbitrations," as "'relate to' is in the text."  168 Cong. Rec. S624-01, S627 (daily ed. Feb. 10, 2022).  So "all the harassment and assault-related claims" will proceed in court at one time, but "if those aren't part of it, then this bill does not apply to it."  *Id.*

Statutory text, context, and purpose all confirm that under the most rational reading of the EFAA, claims are not exempt from compulsory arbitration merely because they are pleaded along with sexual harassment claims.  That is how this Court correctly applied the statute in *Mera*.  There, a plaintiff brought wage-and-hour claims under the Fair Labor Standards Act and New York labor law, in addition to sexual harassment claims under the NYSHRL and the NYCHRL.  *Mera,* 675 F. Supp. 3d at 444.  The court held that the sexual harassment claims fell under the EFAA (and so were exempt from compulsory arbitration), but not the wage-and-hour claims.  *Id.*; *see also O'Sullivan*, 224 A.D. 3d at 630 ("[T]he EFAA does not permit Krauel and O'Sullivan to avoid arbitration of their claims simply by adding Ciaramella's EFAA-protected claims to a single complaint.").

Here, Plaintiff has plead two causes of action in the Complaint, including sex, race, and disability discrimination, and retaliation claims. Compl. ¶¶ 188-209.  If the Court should find that the EFAA applies to Plaintiff's purported sexual harassment claims, per the EFAA and the FAA, it should still enforce the Arbitration Agreement in relation to Plaintiff's remaining allegations.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court compel Plaintiff to arbitrate on an individual basis and that the Court stay this litigation.

Dated:  August 15, 2025

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Hanna E. Martin*
Terry D. Johnson (*pro hac vice* forthcoming)
502 Carnegie Center
Princeton, NJ 08540
Tel: 609.919.6689
Fax: 877.432.9652
terry.johnson@morganlewis.com

Hanna E. Martin
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001
hanna.martin@morganlewis.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this memorandum of law complies with the word-count limitation of Local Civil Rule 7.1(c) because it contains 7,808 words, excluding the parts exempted by Local Civil Rule 7.1(c).

*/s/ Hanna E. Martin*         
Hanna E. Martin
